# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

THOMAS KOELLEN,

        Plaintiff,

v.                                                                                 Case No. 08-C-1038

GREEN BAY CORRECTIONAL INSTITUTION (GBCI),
GBCI WARDEN WILLIAM POLLARD,
JEANANNE GREENWOOD, Health Service Manager,
RICHARD HEIDORN, MD, RICK RAEMISCH,
Secretary of Wisconsin Department of Corrections (DOC),
JAMES GREER, DOC Health Service Director,
JOHN and JANE DOES, DOC Employees,

        Defendants.

## DECISION AND ORDER

The plaintiff, who is incarcerated at Green Bay Correctional Institution (GBCI), lodged a pro se civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. The plaintiff has paid the full filing fee for this action. In a decision and order dated January 9, 2009, the court gave the plaintiff an opportunity to file an amended pleading setting forth the defendants' personal involvement with respect to the plaintiff's claims. The plaintiff has filed an amended complaint, a motion for appointment of counsel, and a motion for summary judgment, all of which are now before the court.

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the matter arises under federal statutes. Venue is proper under 28 U.S.C.

§ 1391. The case was assigned according to the random assignment of civil cases pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72.1 (E.D. Wis.).

Complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity must be screened. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197,

2200 (2007) (citations omitted).  In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  There is no heightened pleading requirement for pro se prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004).  Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado."  *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: (1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was visited upon the plaintiff by a person acting under color of state law.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  The court is obliged to give the plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction.  See *Erickson*, 127 S. Ct. at 2200 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

According to the plaintiff's amended complaint, he was first seen by the GBCI Health Services Unit (HSU) on March 7, 2006, for an "ulcerated and infected foot." (Amended Complaint at 2).  After thirteen days of observation and treatment, he was returned to his dorm unit, even though his foot was "still swollen and quite tender." *Id.*  The plaintiff had a follow up appointment scheduled for April 6, 2006, but the HSU (the nurses and health care supervisor) canceled the appointment, thereby "leaving Koellen to suffer and endure the pain and misery."  *Id.*

- 3 -

The plaintiff states that on April 7, 2006, the plaintiff's foot was so swollen that he could not put his shoe on and he was also in a great deal of pain. Sergeant Annibale was informed of this "urgent" situation and called the HSU to advise that the plaintiff needed to be seen right away. *Id.* An unknown nurse informed the officer that HSU was too busy, that the doctor was not available, and that the plaintiff would have to wait to be seen at an appointment on April 10, 2006. "Over the next days, Koellen took Ibuprofen to try and numb his pain, but the level of pain was so severe, that nothing seemed to help, and his foot continued to swell and become worse." *Id.*

On April 10, 2006, there was no pass for the plaintiff to be seen. However, Sergeant Apiza was informed of the situation and could see how swollen the plaintiff's foot was and "that redness was traveling up his leg." *Id.* The sergeant called the nurses at the HSU, advised them of the "worsened and more serious situation" and requested that they see the plaintiff at once. (Amended Complaint at 3). According to the plaintiff's complaint, an unknown nurse advised the sergeant that the HSU was short of staff and was too busy to see the plaintiff at that time.

The plaintiff states that later that day, the sergeant called the HSU after seeing the plaintiff limping and the expression of pain on his face. The sergeant indicated that this was "a very serious situation" and advised the HSU that she was having the plaintiff brought over in a wheel chair. *Id.* When he arrived at the HSU, the plaintiff was placed in a bed where he stayed for observation and treatment. The plaintiff

emphasizes that "this would have not occurred absent the overriding decision of a caring sergeant, who forced health care to see Koellen immediately." *Id.*

On April 12, 2006, the plaintiff was transferred to St. Vincent Hospital in Green Bay, Wisconsin. At the hospital, the plaintiff was admitted and diagnosed with a "severe cellulitis infection," and he received an IV and other drugs, including pain medications. *Id.* The plaintiff was hospitalized until April 18, 2006, and he remained under observation and treatment at the HSU until April 25, 2006.

Following his return to his dorm unit on April 29, 2006, the plaintiff requested antibiotics on two occasions because his foot "was swelling up again and feeling more painful than it had." *Id.* After the second request for antibiotics, the plaintiff received a response that he would be seen in the near future. The plaintiff asserts that the decision to do nothing further was made by the nurses and their supervisor who reviewed all health service requests.

The plaintiff was finally seen by the HSU on June 10, 2006. He was told that his foot appeared to be improving and no treatment was needed, even though he insisted that his foot was "constantly paining him" and "still swelled up a lot of the time." (Amended Complaint at 3-4).

The plaintiff further states that he continued to complain to HSU personnel that his foot "still bothered him a great deal, swelled and pained him a lot." (Amended Complaint at 4). On February 17, 2008, the plaintiff was advised that he was scheduled to be seen by HSU personnel. When he was finally seen, the plaintiff was

given medication to use in soaking his foot, but his foot continued to bother him. According to the plaintiff, he made other health service requests and even suggested that his problem might be gout. On April 1, 2008, May 18, 2008, and May 28, 2008, the plaintiff was informed that he was scheduled to be seen again. It is unclear whether the plaintiff was seen in between these requests or whether they promised an appointment in the future.

On June 15, 2008, the plaintiff sent a request for more bandages to hold the antibiotic ointment on his toe and foot, but this request was denied because the order had expired and he would have to be seen to determine if this was necessary. In June 2008, the plaintiff was seen and the medical records indicated that his big toe was not improving. On July 17, 2008, Dr. Heidorn saw the plaintiff at the HSU and told him that he was "suspicious of gout" based on the plaintiff's blood tests. (Amended Complaint at 5).

In August 2008, the plaintiff was diagnosed with gout, and specific treatment for gout commenced. "Once this treatment started, Koellen's toe and foot started to heal and the swelling diminished as well as the degree of pain he had been experiencing for such a lengthy period of time." (Amended Complaint at 6).

The plaintiff states that, as of January 2009, his foot remains sensitive, and he is unable to wear the state-issued shoes without discomfort. He states that he often has "tingling in his foot," and that there is "a permanent loss of feeling." *Id.*

The plaintiff maintains that the problem could have been prevented if the nurses had arranged to see the plaintiff when they were initially notified by the sergeants "of the serious and urgent need for medical attention." (Amended Complaint at 7). The plaintiff also contends that if "vigorous tests" had been conducted earlier, "the proper diagnosis of gout would have been made, and that proper treatment for gout would have commenced long ago, rather than to allow Koellen to suffer as the case was for nearly 2 years while this went undiagnosed and improperly treated." *Id.* According to the plaintiff, he now lives with a constant fear that he may stumble or fall due to the loss of feeling in his foot.

The plaintiff's amended complaint does not contain a specific request for relief, but his original complaint contained a request for punitive and compensatory damages, as well as a request for a permanent injunction forbidding the defendants from retaliating against the plaintiff due to this action brought against them. Although an amended complaint supersedes an original complaint, the court will consider the plaintiff's original request for relief to be part of his amended complaint. *See Duda v. Board of Ed. of Franklin Park Public School District No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998).

The plaintiff names the following defendants: 1) GBCI Warden William Pollard; 2) Jeananne Greenwood, the GBCI HSU supervisor; 3) Department of Corrections; 4) Dr. Richard Heidorn; 5) James Greer, Health Service Director for DOC; 6) DOC Secretary Rick Raemisch; and 7) Jane and John Does - prison employees.

First, the plaintiff alleges that defendants Greenwood, Dr. Heidorn, and the unnamed nurses personally participated in the denial of medical care for him that resulted in a delay in his treatment for gout and permanent nerve damage. He submits that this constitutes a violation of his right to medical care under the Eighth Amendment.

To establish liability under the Eighth Amendment, a prisoner must show: 1) that his medical need was objectively serious; and 2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1996); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A

finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42).

Here, the plaintiff asserts that he was suffering from a serious medical condition, namely foot pain that was ultimately diagnosed as gout. He also asserts that defendants Greenwood, Dr. Heidorn, and several unnamed nurses acted with deliberate indifference to his serious medical condition.[1] At this juncture, the court finds that the plaintiff may proceed on an Eighth Amendment claim for the delay in diagnosing and treating his gout against defendants Greenwood, Dr. Heidorn, and the unnamed nurses.

Second, the plaintiff makes a claim against Warden William Pollard and DOC Health Service Director James Greer for failure to maintain adequate staffing in the HSU at GBCI. The plaintiff asserts that defendant Pollard was "liable to see that shortages of staff within the Health care unit were filled, so as not to delay or deny inmates . . . timely and adequate medical attention." (Amended Complaint at 8). He alleges that defendant Pollard could have ordered overtime hours, hired additional staff or mandated nurses to work to cover for the absence of others. Similarly, the plaintiff alleges that it is defendant Greer's responsibility "to assure that adequate staffing is maintained at institutions and he failed to do so." *Id.* At this juncture, the

---

[1] The plaintiff has named John Doe and Jane Doe nurses and described their involvement in the facts underlying his Eighth Amendment medical care claim. While he must eventually discover the names of the defendants, at the *in forma pauperis* stage of the proceedings a complaint is not subject to dismissal for failure to identify some of the defendants by name. *Billman v. Ind. Dep't of Corrs.*, 56 F.3d 785, 789 (7th Cir.1995).

plaintiff will also be allowed to proceed on an Eighth Amendment claim against defendants Pollard and Greer that their failure to maintain adequate staffing levels in the GBCI HSU constituted deliberate indifference to his serious medical need.

Third, the plaintiff asserts claims against the Wisconsin Department of Corrections (DOC) and DOC Secretary Rick Raemisch. The Wisconsin Department of Corrections is not a proper defendant because it is not a "person" for purposes of § 1983. *See Lapides v. University of Georgia*, 535 U.S. 613, 617-18 (2002); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). It will be dismissed as a party to this action. Regarding defendant Raemisch, the plaintiff states that he is "the general supervisor or head above all, as he is secretary of the DOC. He is to oversee that every department and facility under him operates smoothly and so as not to cause a constitutional violation . . .." (Amended Complaint at 8). The plaintiff's claim against defendant Raemisch is rooted solely in the doctrine of *respondeat superior*, which is not actionable under § 1983. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). The court will dismiss defendant Raemisch as a party in this action.

In summary, the plaintiff may proceed on an Eighth Amendment medical care claim against defendants Jeananne Greenwood, Dr. Richard Heidorn, and unnamed nurses identified as Jane Does and John Does. He will also be able to proceed against defendants William Pollard and James Greer for their alleged failure to maintain adequate staffing in the HSU at GBCI.

## MOTION FOR APPOINTMENT OF COUNSEL

The plaintiff has also filed a motion for appointment of counsel. He argues that he requires assistance in the preparation of legal correspondence and pleadings because he does not have a high school diploma and tests at a fourth grade level. The plaintiff also argues that he has no professional legal training and, therefore, needs the assistance of a legal professional to comply with the court's rules and procedures and to assure that his rights are protected.

Indigent civil litigants have no constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). The court can request, but cannot compel, attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir.2007); *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir.1997) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir.1995)). However, this court has no access to funds to compensate attorneys for such representation.

As a threshold matter, litigants must make a reasonable attempt to secure private counsel on their own. *Pruitt*, 503 F.3d at 654; *Zarnes*, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear competent to try the case himself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *Pruitt*, 503 F.3d at 654-655 (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir.1993)).

- 11 -

Case 2:08-cv-01038-PJG   Filed 06/12/09   Page 11 of 14   Document 10

In this case, although the plaintiff has not provided any indication that he has unsuccessfully attempted to obtain legal counsel on his own, it appears that the plaintiff is competent to try the case himself. The plaintiff has provided detailed complaints setting forth his claims. The issues in this case appear at this stage to be straightforward and uncomplicated. Therefore, at this stage of the proceedings, given the nature of the case, the court concludes that the plaintiff is competent to litigate this case himself. Accordingly, the plaintiff's motion for appointment of counsel will be denied.

## MOTION FOR SUMMARY JUDGMENT

The plaintiff has also filed a motion for summary judgment. The defendants in this case have not yet been served, nor have they had an opportunity to respond to the plaintiff's amended complaint. As such, the plaintiff is not entitled to summary judgment. His motion for summary judgment will be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion to appoint counsel be and hereby is **DENIED without prejudice** (Docket #7).

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment be and hereby is **DENIED** (Docket #9).

**IT IS FURTHER ORDERED** that defendants Rick Raemisch and the Wisconsin Department of Corrections will be **DISMISSED** as parties to this action.

**IT IS FURTHER ORDERED** that the plaintiff serve a copy of the Amended Complaint, a waiver of service form, and/or summons, and a copy of this order, on the following defendants: Jeananne Greenwood, Dr. Richard Heidorn, Warden William Pollard, James Greer, and Jane Does and John Does, nurses at the GBCI HSU.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the Amended Complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 12th day of June, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge